## GREAT HILL LAKE, INC.
### *vs.*
## FRANK B. CASWELL, ET ALS.

Superior Court        Middlesex County        File No. 7442

MEMORANDUM FILED MARCH 25, 1939.

*Carlos Ellis, Jr.,* of Middletown, for the Plaintiff.

*William S. Hyde,* of Manchester, for the Defendants.

BALDWIN, J.   The plaintiff has brought this action against the named defendant and nine other defendants, seeking to quiet and settle title to approximately 75 acres of land located in Portland.

It appears that the plaintiff and its predecessors in title, for a long period of years, owned in fee, 17 acres of land and flowage rights over some 75 acres, more or less.

Of the 17 acres owned by the plaintiff in fee, six acres were not definitely located, but no defendant claimed any interest in such six acres.

Of the remaining 11 acres of the 17 acres owned by the plaintiff in fee, substantially four acres are under the waters of Great Hill Lake, sometimes called Great Hill Pond.

Upon the remaining seven acres of the plaintiff a dam is located which impounds the waters of this lake or pond.

All of these defendants, with the exception of the defendants, Ernest C. Halliday and Annie R. Halliday, own land bordering on Great Hill Lake and under the waters of the lake, over which land under the waters of the lake flowage rights are owned by the plaintiff.

There are also other owners of land bordering on this lake, not defendants in this action.

The plaintiff, and its predecessors in title, for a long period of years, has owned and maintained the dam referred to.   Up to about 1922, plaintiff's predecessors in title used the waters from this lake for power for the operation of its plant for the manufacture of oakum.

Upon the trial, the defendants, Ernest C. and Annie R. Halliday, disclaimed any right or interest in any land contiguous to or under the waters of the lake.

These defendants and all of the other defendants and their predecessors in title and a large number of the general public, it was admitted by the plaintiff, and all, have used the lake for

the purpose of watering stock, taking water therefrom for domestic purposes, for bathing and fishing therein, for boating thereon, for cutting ice and skating thereon, for a long period of years—much longer than is required to obtain title by prescription, and such uses have been made of the lake by an open, visible, notorious, adverse, continuous and uninterrupted use and under claim of right. It has not been exclusive by any one of these defendants because it has been enjoyed in common by them with each other and with a large number of others living in the vicinity of the lake and with a large number of the general public.

The State of Connecticut owns a public park bordering upon this lake in which it has fireplaces and piers extending into the lake and accommodations for public outings, to which park upwards to 3,500 people resort in a season, and these patrons of this park make use of the lake for bathing, boating and fishing.

The uses described have been made over this period of years without interference by the plaintiff or any of its predecessors, but with its and their full knowledge and under claim of right.

There is no controversy here over any right or interest in the land which the plaintiff claims to own in fee. No defendant has claimed at any time any interest in any of this land, and there is no controversy over flowage rights.

Plaintiff has sought to exact a yearly fee or charge from property owners around and in the vicinity of the lake who make use of the lake, including some of these defendants, if not all of them. In this venture it has not met with that success it desired and this action was brought.

Plaintiff in its brief makes the following claim: "The plaintiff pays the taxes assessed against the lake property. It stands the expense of keeping the dam in repair. It runs the risk of liability for any accident resulting from the breaking of the dam and for accidents occurring on the dam and lake property. It and its predecessors in title paid a substantial sum for the property, believing they received good title. Yet in these days of adequate electric power, easily available at reasonable rates, there is small occasion for use of water power. It seems fair that such benefits as abutting property owners derive from the lake they should pay for in order to reimburse the plaintiff for its expense and investment, for, with no great use for

the water power there is no other way for the plaintiff to derive revenue from its investment or reimburse itself for its ·expenses."

These defendants and their predecessors in title and a large number of the general public, admittedly by plaintiff, for years longer than the period required to obtain title by prescription, have used the lake for watering stock, boating, swimming, fishing, skating and cutting ice, without interference from plaintiff or its predecessors in title. The defendants therefore now have the right to continue in the enjoyment of such rights and uses and plaintiff has no right to interfere with the enjoyment of any such rights by collecting or attempting to collect any compensation or fee for the exercise of such rights, or in any other manner.

Judgment may be entered for the defendants in accordance herewith and to recover their costs.